Hall, Judge.
In this case both the plaintiffs and defendants claim the negroes for which this action is brought, under William Williamson, one of the legatees of Thomas Davis. The special verdict states, that William Williamson removed himself to and became a citizen of this state, where he lived to the time of his death. It is admitted that, at the time of his death, by the laws of Virginia negro property was made to descend like land to the heirs at law, he making on that account home pecuniary satisfaction to the next of kin; and that at that time, by the *152 laws of this state, property of that description was made distributable equally amongst all the children of an intestate. The question is, whether the negroes for which this suit is brought shall be disposed of agreeably to the laws of Virginia, (they having been in Virginia at the time of the death of William Williamson, their owner) or by the laws of this state, where William Williamson was a resident at the time of his death. I take the rule of law in such case to be this : that the personal estate of the intestate is distributable according to the laws of the Country where the intestate was a resident, or, in other words, where he was a citizen or subject at the time of his death. Ambler 25, 415. 2. Vesey 35. Although by the laws of Virginia negroes are made to descend like land to the heir at law, in many other respects they are considered to be personal estate ; and indeed our law would view them as personal estate, when any case like the present would occur, notwithstanding the laws of Virginia would ever view them in all respects as real property. I cannot think the decree made by the court of Amelia strengthens the defendants title, because the plaintiffs were not parties to it—had they been parties to it, and the grounds on which the present pretensions rest been made known to that court, I presume their decree would have been different. I think that all the children of William Williamson are equally entitled to the property in dispute, among whom the plaintiff will be compellable to make distribution, after debts are paid, &c. and that judgment should be entered for the plaintiffs.
Johnston, Judge.—
Judge Taylor having fully explained the principles on which I found *153 my decision, it is unnecessary to repeat them—I concur fully with him.
Taylor, Judge.—
The material facts of this case are, that Thomas Davis, by his will, which was admitted to probate in the year 1722, bequeathed a female slave, of the name of Sarah, to his daughter Frances Williamson, during her life, and after her decease, the wench and her increase to be equally divided among the children of Frances.—Frances had six children, one of whom, William, removed into this state, and died in 1768, leaving a widow and nine children; George being his eldest son. Afterwards, in the beginning of the year 1769, Frances died; upon which the issue of Sarah were divided, under the authority of a Court of Chancery in Virginia. A sixth part was allotted to George, as the heir at law of William—this was received by his guardian, and afterwards upon his arriving at full age brought into this state by himself; until which time, all the negroes descended from Sarah had remained constantly in Virginia. George died in the year 1780, leaving a widow and child, who possessed themselves of the negroes, which they have retained ever since. The Widow of William administered upon her husband's estate, and afterwards intermarried with Peter Cox, who, together with his wife, hath brought the prefect suit, to recover the negroes as of the goods and chattels of William; having previously demanded them of the defendants,, one of whom defends as administrator in right of his wife, to George Williamson, and the other as guardian to George’s child.
*154 From these facts two questions arise: one is whether the division made in Virginia ought not, as far as it respected the share claimed through William, to have been according to the laws of this state, whereof William before and at the time of his death was a citizen and inhabitant? The other is, whether, upon the supposition that the division was improperly made, the decree directing it is not conclusive, as the sentence of a court of competent jurisdiction.
0As to the firft, f confider it perfeftly clear and well fettled, that although the defcent of lands is to be regulated according to the law of the country wherein they are fituated, yet the fucceffion and distribution of moveable property is to be guided by the law of the country where the owner has his domicile. This is a principle of the law of nations, which hath been recognized and fanbtioned by a variety of adjudications. 2 Vesey 35. Ambler 25. 4 Term 184, &c. Bl. 131, 437, 691. Ld. Kaimes 274. Vattel, b. 2, c. 7, s. 85; c. 8, s. 109, 110. I can entertain no doubt that these authorities must be approved and acted on, by the courts of this state, upon an application to distribute the effects of a foreigner, if made within due time; and that they would receive evidence of the law according to which the distribution was sought. I do not indeed recollect any decision upon this point in our own courts; but my opinion is sounded no less upon the weight and number of the cases, than upon the intrinsic justice of the principle which pervades them. It seems also to acquire strength in its application to the United States, from the nature of their political relations, which are calculated equally to cherish a spirit of *155 friendly intercourse amongst their respective citizens, and to promote in each state a deference to the laws of all.
The court of Virginia would without doubt have given effect to the claims of the other parties concerned, unless there be some law of that state expressly to prevent it: The existence of such a law, however, cannot well be imagined, because there can be no reason wherefore that state should be concerned about the manner in which strangers hold that sort of property, which they may freely carry away with them. All that, as a state, they can be interested in ascertaining, is, whether the party asserting a claim, has really a right, according to the laws of his own country; and whether those laws vest a chattel in one person, or direct its division among twenty, they equally merit respect and observance. Therefore, if in the state of Virginia this property is cloathed with some of the qualities of real estate—if like that it is made descendable to the heirs at law, and exempted from the payment of debts where there are sufficient assets without it, so far its nature is changed; but in all other respects it remains and must be considered as chattel property—and the local policy which hath thus distinguished it, must necessarily confine the operation of the laws respecting it to the citizens and inhabitants of that state: This must be understood, however, in relation to the laws ascertaining the right, and not those prescribing the remedy. The latter must, from their nature, bind equally strangers and citizens.
Slaves being then chattel property, notwithstanding incidents annexed to it applicable only *156 to the citizens of that state, there is a conflict of laws in the two states relative to them: and in every such case, the laws of the country where the owner resides must prevail.—2dly. The order made by the Court of Chancery in Virginia, relative to this division, cannot be conclusive as to the title of the negroes in question. Of the persons claiming a right under William, George alone was party to the suit in which it was pronounced. The other children, and the widow of William, were neither parties nor privies, nor was there any person before the court interested to protect their rights, or even to disclose them. Had the distribution been amongst all, George's share would have been so much the less, and therefore he was interested to keep their pretensions out of view. Besides, the points now in contest were not decided upon the former occasion: The only question then was, whether the property should be divided into six equal shares, in which no doubt all the parties concurred—the question now is, whether the widow and children, shall share with George the sixth part he received. The present plaintiffs, therefore, and those for whom they claim, have never been, heard, their rights have never been asserted; and under such circumstances, it is contrary to natural justice, and to the law both of Virginia and this state, that they should be concluded by the decree. My opinion is, consequently, in favour of the plaintiffs.
Macay, Judges
It is sufficient for the determination of this cause, that in Virginia negro slaves are considered as chattel property—Wash. Rep.—Immovable property follows the disposition of that state wherein it is situated; but *157 the succession and disposition of movable property, is not regulated by the law of the country where it is locally situated, but by that of the owner’s patria or domicile—4 Term Rep. 184.— Hunter vs, Potts.—Judgment for plaintiffs.